Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

*Attorneys for Plaintiffs*
*His Majesty the King in Right of the Province of British Columbia and Board of Education of School District No. 59 (Peace River South)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

HIS MAJESTY THE KING IN RIGHT OF THE PROVINCE OF BRITISH COLUMBIA and BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 59 (PEACE RIVER SOUTH), individually,

*Plaintiffs*,

v.

SAMUEL ALTMAN, an individual, OPENAI FOUNDATION (F/K/A OPENAI, INC.), a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, OPENAI HOLDINGS, LLC, a Delaware limited liability company, OPENAI GROUP PBC, a Delaware public benefit corporation, and DOES 1 through 10,

*Defendants*.

Case No. 3:26-cv-10743-JSC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: December 17, 2026
Time: 10:00 a.m.
Judge: Hon. Jacqueline S. Corley
Crtrm.: 8th (19th Floor)

**REDACTED**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 5

A. The private interest factors weigh in favor of litigating in California. ........ 5

1. The residence of the parties and witnesses ........ 7

2. The forum's convenience to the litigants ........ 10

3. Access to physical evidence and other sources of proof ........ 12

4. Whether unwilling witnesses can be compelled to testify ........ 15

5. The cost of bringing witnesses to trial ........ 16

6. The enforceability of the judgment ........ 16

7. Any practical problems or other factors that contribute to an efficient resolution ........ 16

B. The public interest factors weigh in favor of litigating in California. ........ 17

1. The local interest of this lawsuit ........ 17

2. The court's familiarity with governing law ........ 20

3. The burden on local courts and juries ........ 21

4. The congestion in the court factor is neutral at most, and the costs of this dispute relate to the California forum ........ 22

C. Defendants Have Not Disclosed to the Court Their Intent to Seek Additional Discovery Relating to U.S.-based Third Parties ........ 22

V. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adam v. Saenger*,
303 U.S. 59 (1938) .......... 9

*Andersen v. Stability AI Ltd.*,
No. 23-cv-00201-WHO (LJC), 2026 WL 1244041 (N.D. Cal. May 6, 2026) .......... 14

*Bos. Telecomms. Grp., Inc. v. Wood*,
588 F.3d 1201 (9th Cir. 2009) .......... 5, 9

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) .......... *passim*

*City of Almaty v. Khrapunov*,
685 F. App’x 634 (9th Cir. 2017) .......... 17

*Cordova v. Huneault*,
No. 25-cv-04685-VKD, 2026 WL 1076829 (N.D. Cal. Apr. 20, 2026) .......... 10

*Dep’t of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
683 F. Supp. 1463 (S.D.N.Y. 1988) .......... 6, 19

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .......... 4

*Doud v. Kochai*,
No. C 12-6061 MEJ, 2013 WL 5313701 (N.D. Cal. Sept. 23, 2013) .......... 11, 12

*Estados Unidos Mexicanos v. Diamondback Shooting Sports Inc.*,
No. 4:22-CV-00472-TUC-RM, 2024 WL 1256038 (D. Ariz. Mar. 25, 2024) .......... 20

*Etaliq, Inc. v. Cisco Sys., Inc.*,
No. CV 11-3672 GAF (FFMx), 2011 WL 13220445 (C.D. Cal. July 20, 2011) .......... 21

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) .......... 15

*In re Air Crash at Madrid, Spain, on August 20, 2008*,
893 F. Supp. 2d 1020 (C.D. Cal. 2011) .......... 15

*In re Air Crash Over the Mid-Atlantic on June 1, 2009*,
760 F. Supp. 2d 832 (N.D. Cal. 2010) .......... 13, 20

*In re OpenAI, Inc. Copyright Infringement Litig.*,
776 F. Supp. 3d 1352 (J.P.M.L. 2025) .......... 1

*In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December 1984*, 634 F. Supp. 842 (S.D.N.Y. 1986), *aff'd as modified*, 809 F.2d 195 (2d Cir. 1987) .......... 19

*In re Vioxx Products Liability Litigation*, 448 F. Supp. 2d 741 (E.D. La. 2006) .......... 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 3:15-MD-02672-CRB, 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) .......... 5, 15

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) .......... 14

*Juniper Networks, Inc. v. Andrade*, No. 20-CV-02360-BLF, 2021 WL 3514103 (N.D. Cal. Aug. 10, 2021) .......... 17

*Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514 (6th Cir. 1986) .......... 18

*Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233 (S.D. Fla. 2006), *aff'd*, 240 F. App'x 822 (11th Cir. 2007) .......... 20

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) .......... 4, 9, 12, 13

*Ministry of Health, Province of Ontario v. Shiley Inc.*, 858 F. Supp. 1426 (C.D. Cal. 1994) .......... 21, 22

*Morris v. AGFA Corp.*, 51 Cal. Rptr. 3d 301 (Cal. Ct. App. 2006) .......... 10

*Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329 (C.D. Cal. 1997) .......... 19

*Nibirutech Ltd. v. Jang*, No. C 14-3091 PJH, 2015 WL 831465 (N.D. Cal. Feb. 23, 2015) .......... 11, 12

*People Ctr., Inc. v. Deel, Inc.*, No. 25-cv-02576-CRB, 2026 WL 497491 (N.D. Cal. Feb. 23, 2026) .......... 10

*Pepper, N.A. v. Expandi Inc.*, No. 15-CV-04066 NC, 2015 WL 7720922 (N.D. Cal. Nov. 30, 2015) .......... 15

*Pfizer Inc. v. Gov't of India*, 434 U.S. 308 (1978) .......... 6

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) .......... 5, 18, 21

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ....... 4

*Ravelo Monegro v. Rosa*,
211 F.3d 509 (9th Cir. 2000) ....... 4, 5, 6

*Rep. of Colombia v. Diageo N. Am. Inc.*,
531 F. Supp. 2d 365 (E.D.N.Y. 2007) ....... 6

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016) ....... 19

*Seguros Universales, S.A. v. Microsoft Corp.*,
32 F. Supp. 3d 1242 (S.D. Fla. 2014) ....... 19

*Silverlake Park LLC v. Stewart Title Guar. Co.*,
No. 2:17-CV-03291-CAS-AGRx, 2025 WL 241118 (C.D. Cal. Jan. 10, 2025) ....... 21

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ....... 4

*Stangvik v. Shiley Inc.*,
819 P.2d 14 (Cal. 1991) ....... 17

*Toronto Star Newspapers Ltd. v. OpenAI Inc.*,
2025 ONSC 6217 ....... 1, 11

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) ....... *passim*

*Umeda v. Tesla Inc.*,
No. 20-cv-02926-SVK, 2020 WL 5653496 (N.D. Cal. Sept. 23, 2020) ....... 13

*Vivendi SA v. T-Mobile USA Inc.*,
586 F.3d 689 (9th Cir. 2009) ....... 6

*VoyagerOne Pte. Ltd. v. Starfortune Interactive Ent. Tech. Co, Ltd.*,
No. 2:25-CV-04730-SVW-AGR, 2025 WL 4065359 (C.D. Cal. Dec. 15, 2025) ....... 16

*W.S. Kirkpatrick & Co., Inc. v. Env't Tectonics Corp., Int'l*,
493 U.S. 400 (1990) ....... 19

*West v. Multibanco Comermex, S.A.*,
807 F.2d 820 (9th Cir. 1987) ....... 19

**STATUTES**

28 U.S.C. § 1782 ....... 14, 15, 22, 23

50 U.S.C. §§ 4801 ....... 1

**RULES**

Fed. R. Civ. P. 30 .......... 9

Fed. R. Civ. P. 32 .......... 14, 15

Fed. R. Civ. P. 34 .......... 9

Fed. R. Civ. P. 43 .......... 14, 16

Fed. R. Civ. P. 44.1 .......... 21

Fed. R. Civ. P. 45 .......... 15

**OTHER AUTHORITIES**

Canada Evidence Act, R.S.C. 1985 .......... 14

Coroners Act, S.B.C. 2007 .......... 17

Def. Sam Altman's Mot. to Dismiss,
*Off. of the Att'y Gen. v. OpenAI Global, LLC*,
No. 26-000295-GCAXMX (Fla. 10th Jud. Cir. Ct. Sept. 30, 2026) .......... 7

Defs.' Mot. to Dismiss *Gourley*, *Morales* & *Grant* Compls.,
*Joshi v. OpenAI Found.*, No. 4:26-cv-00222-MW-MJF
(N.D. Fla. Oct. 20, 2026), ECF No. 52 .......... 4, 7

Evidence Act, R.S.B.C. 1996 .......... 14

*Musk v. Altman*,
No. 4:24-cv-04722-YGR (N.D. Cal.) .......... 10

PIPEDA Findings #2026-002, paras. 23, 34, 41, 43, 50 (May 6, 2026) .......... 6, 12

Supreme Court of British Columbia, 2024 Annual Report .......... 22

## I. INTRODUCTION

California is the proper forum for this action. The British Columbia Governmental Entities ("BCGEs") have filed in OpenAI's home jurisdiction, seeking injunctive and economic relief here. A plaintiff's choice of forum is owed deference, even if it is a foreign plaintiff. For this reason, OpenAI bears the burden of showing that litigation in its home state is so oppressive and vexatious that the private and public interest factors ***strongly*** favor dismissal. But this is a tall order where multiple foreign plaintiffs have come to Defendants' home turf—itself the situs of substantial relevant evidence—and made themselves available to discovery. Among these plaintiffs are the living witnesses to the terrible tragedy—school employees, victims, and families of victims—as well as those who responded in the aftermath. And in general, OpenAI has argued that this is the correct forum for claims in a myriad of other cases, including cases in Canada and the copyright Multidistrict Litigation.[1] The factors are not just neutral, which on its own requires honoring the BCGEs' choice of forum: they favor this jurisdiction.

OpenAI presents two main arguments for why this Court should decline jurisdiction in its home state. OpenAI's primary argument is that the majority of the evidence is in British Columbia. This is not correct for four reasons. First, OpenAI does not address the evidence relating to its conduct. OpenAI employees and officers acted in California, including making decisions about the design of the product; not to ensure adequate safeguards in ChatGPT; and not to warn Canadian authorities. While OpenAI vaguely offers to "produce documents electronically to all plaintiffs, regardless of forum," ECF No. 18 at 7, this language is not specific and does not address impediments that OpenAI would certainly raise, including the Export Control Reform Act of 2018, 50 U.S.C. §§ 4801, *et seq.*, and limitations on depositions, including those of former employees and senior management, if the case were heard in Canada.

Second, the next most relevant evidence is available in California because the BCGEs (and the Individual Plaintiffs) filed here. The Province and SD59 are parties to this action and subject to reasonable discovery. While OpenAI refers to "hundreds" of potential witnesses, it is not specific, and likely refers to Provincial and SD59 employees. Without waiving relevance, privilege and other objections, these witnesses are available for discovery in this case consistent with the law of this district.

[1] *See Toronto Star Newspapers Ltd. v. OpenAI Inc.*, 2025 ONSC 6217, para. 111; *In re OpenAI, Inc. Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1353 (J.P.M.L. 2025).

Third, the burden for Defendants to obtain discovery of third parties falls well short of "vexatious." OpenAI's claims about the relevance and volume of the evidence it may want are exaggerated. There were only three RCMP officers on the scene as the tragedy unfolded, although others appeared later. As the BCGE experts explain, the principles underlying the enforcement of letters rogatory to obtain third-party documents from California, including as to law enforcement, are consistent with the standards OpenAI would need to satisfy to obtain third-party documents in British Columbia. OpenAI's own expert agrees: "the presumption is to enforce letters rogatory unless [the request is] contrary to Canadian public policy or otherwise prejudicial to Canadian sovereignty or to Canadian citizens." Lockhart Decl. ¶ 12. If OpenAI is seeking discovery that is "contrary to Canadian public policy or otherwise prejudicial to Canadian sovereignty or to Canadian citizens," such evidence would be unavailable to it in British Columbia as well.

Fourth, OpenAI ignores the need for discovery of third parties in the United States. OpenAI itself points to the U.S. prosecution of James Cody Bryant, a Washington resident charged with conspiring with the shooter. OpenAI also sent the BCGEs correspondence identifying [redacted]. None of this evidence is in British Columbia.

OpenAI's second argument asks this Court to override the government of British Columbia's assessment of British Columbia's public interest in this litigation. As the Crown, the Province's decision to file the action in California speaks for itself: the Province believes the public interest factors weigh in favor of litigating in California. OpenAI nonetheless argues that Canada wants this case heard in British Columbia because this case will "assess the role of Canadian law enforcement, Canadian firearms regulations, and numerous British Columbian governmental institutions in the events that preceded and followed the shooting." This is not true, for at least two reasons.

First, issues of core public policy are not justiciable in a Canadian tort action. Sobkin Decl. ¶¶ 3–11.[2] OpenAI claims, incorrectly, that a civil tort action in British Columbia would be an opportunity to

[2] In support of the BCGEs' opposition are the Declaration of Peter Lawless (the "Lawless Decl."), the Declaration of Michael Sobkin (the "Sobkin Decl."), the Declaration of Kate Phipps (the "Phipps Decl."), and the Declaration of Lesley E. Weaver (the "Weaver Decl.") filed herewith. The Phipps Declaration addresses privacy issues including Defendants' Administrative Motion for Leave to File the Supplemental (continued...)

broadly assess the sufficiency of Canadian gun, mental health, and education laws. To the contrary, Canadian courts will not adjudicate core policy decisions of government in a private tort action. Sobkin Decl. ¶¶ 3–11. OpenAI also points to privacy proceedings in Canada addressing alleged privacy violations by OpenAI, as well as a coroner's inquest. But those proceedings address other claims and issues that cannot (and therefore will not) be litigated in conjunction with the tort claims at issue here. Phipps Decl. ¶¶ 53–69; Lawless Decl. ¶ 15.

Second, OpenAI ignores California's significant interest in the conduct of resident corporations that are a major part of a California-based artificial intelligence industry. The California Attorney General specifically permitted OpenAI to relinquish its nonprofit status subject to California's oversight of its safety standards, including the Safety and Security Committee's authority to halt model releases. Memorandum of Understanding ¶¶ 9–12, 22.[3] Out of deference to California's interest, the BCGEs ask this Court to determine the standard of care and appropriate remedies for a company that "generates thousands of jobs and over a billion dollars of positive economic impact for California annually."[4] OpenAI's assertion that British Columbia has a more compelling interest in its operations is disingenuous, at best.

Defendants cannot meet their burden on these facts, and the Court should deny their forum non conveniens motion.

## II. BACKGROUND

The BCGEs assert that Defendants designed a defective product in California and decided, in California, not to warn Canadian authorities when its product, ChatGPT, [redacted]. Compl. ¶¶ 5–6, 23, 39–43; FAC ¶¶ 23, 33, 60–61, 89, 153–54. [redacted]

---

Declaration of Stephanie G. Herrera filed yesterday (ECF No. 69, *In re Tumbler Ridge Shooting Litigation*, No. 3:26-cv-03701-JSC (Nov. 4, 2026)).

[3] *Memorandum of Understanding between Rob Bonta, Attorney General of California, and OpenAI, Inc.*, CA DEPT. OF JUSTICE (Oct. 27, 2025), https://oag.ca.gov/system/files/attachments/press-docs/Final%20Executed%20MOU%20Between%20OpenAI%20and%20California%20AG%20re%20Notice%20of%20Conditions%20of%20Non-Objection%20%2810.27.2025%29%20%28Signed%20by%20OpenAI%29%20%28Signed%20by%20CA%20DOJ%29.pdf (the "Memorandum of Understanding").

[4] *Id.* at 1.

[redacted]. Compl. ¶¶ 23, 54–55; FAC ¶¶ 12–13, 114. The code creating these conversations and retaining them is in California. Compl. ¶¶ 18, 23; FAC ¶¶ 50, 60–61. The humans who designed the product and created the code that wrote the conversations are in California. Compl. ¶¶ 15–19, 23; FAC ¶¶ 46–48, 51, 60–61. The BCGEs claim that OpenAI aided and abetted the shooter in the pursuit and execution of a mass assault. Compl. ¶¶ 84–93.

The BCGEs identify twenty-two individuals, by name, who they believe have information about the design and deployment of this defective product in California. FAC ¶¶ 54–55, 61.[5] Defendants have represented elsewhere that every act attributed to Mr. Altman, including "setting corporate policy, approving product features, [and] directing model releases," "occurred" in California. Defs.' Mot. to Dismiss *Gourley*, *Morales* & *Grant* Compls. at 45, *Joshi v. OpenAI Found.*, No. 4:26-cv-00222-MW-MJF (N.D. Fla. Oct. 20, 2026), ECF No. 52 ("*Joshi*"). Yet Defendants' motion hardly addresses the import and existence of the same evidence in this action. If Defendants attempt to cure this on reply, Plaintiffs are entitled to an opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

## III. LEGAL STANDARD

Forum non conveniens is "an exceptional tool to be employed sparingly." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)). Federal law governs the motion. *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir. 2000). The Court considers whether an adequate alternative forum exists and whether the balance of private and public interest factors favors dismissal. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). The defendant bears the burden on each element, *Carijano*, 643 F.3d at 1224, and "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). The Court will not disturb the plaintiff's choice "unless the

[5] *See also OpenAI announces new members to board of directors*, OPENAI (Mar. 8, 2024), https://openai.com/index/openai-announces-new-members-to-board-of-directors/; Luz Pena, *20-year-old arrested after throwing Molotov cocktail at Sam Altman's San Francisco home, OpenAI says*, ABC7 NEWS (Apr. 11, 2026), https://abc7news.com/post/suspect-arrested-throwingmolotov-cocktail-sam-altmans-san-francisco-home-openai-says/18866476/; Ann O'Leary, LINKEDIN, https://www.linkedin.com/in/ann-o-leary-2a6a6b6/ (last visited Oct. 29, 2026) (listing location as the San Francisco Bay Area); *About Sierra*, SIERRA, https://sierra.ai/about (last visited Oct. 29, 2026) (a company Bret Taylor co-founded which began in San Francisco).

'private interest' and the 'public interest' factors strongly favor" dismissal. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) (quoting *Lueck*, 236 F.3d at 1146). "[A] plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant 'as to be out of proportion to plaintiff's convenience.'" *Id.* (quoting *Ravelo Monegro*, 211 F.3d at 514). The defendant "must provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258–59 (1981); *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1210 (9th Cir. 2009).

## IV. ARGUMENT

The BCGEs do not contest that British Columbia is an alternative forum for their claims, and defer to the Individual Plaintiffs' position as to British Columbia as an alternative forum for their claims. However, the Court should not disturb Plaintiffs' choice of forum "unless the 'private interest' and the 'public interest' factors strongly favor" dismissal. *Tuazon*, 433 F.3d at 1180; *see In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 3:15-MD-02672-CRB, 2017 WL 66281, at *7–11 (N.D. Cal. Jan. 4, 2017) (Breyer, J.) (denying forum non conveniens motion where the parties did not dispute Germany's adequacy). The balance of the private and public interest factors favors California.

### A. The private interest factors weigh in favor of litigating in California.

The private interest factors weigh in California's favor. Plaintiffs chose the forum where every known Defendant resides and where OpenAI maintains the source code and records of its relationship with Van Rootselaar, and where the two individuals who decided whether to refer Van Rootselaar's account to law enforcement reside.[6] OpenAI argues that Plaintiffs' choice of forum "deserves less deference" because Plaintiffs are foreign and because of "indicia of strategic forum selection." ECF No. 18 at 29. Plaintiffs' foreign status reduces deference, but "less deference is not the same thing as no deference." *Carijano*, 643 F.3d at 1227 (quoting *Ravelo Monegro*, 211 F.3d at 514). At any level of deference, the defendant bears the burden of proof. *Bos. Telecomms. Grp.*, 588 F.3d at 1212 (reversing a forum non conveniens dismissal because the district court did not hold the defendant "to his burden of making 'a clear showing of facts

[6] Ex. 1 to the Weaver Decl., Defendants' Stmt. of Facts ¶ 4, *In re Tumbler Ridge Shooting Litig.*, No. 3:26-cv-03701-JSC (N.D. Cal. Oct. 15, 2026) ("Defs.' Stmt. of Facts").

which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience'" (quoting *Ravelo Monegro*, 211 F.3d at 514)).

Courts have honored foreign states' choice of forum because "a foreign nation is generally entitled to prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do." *Pfizer Inc. v. Gov't of India*, 434 U.S. 308, 318–19 (1978); *see Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 683 F. Supp. 1463, 1483–86 (S.D.N.Y. 1988) (denying motion and permitting claims brought by British government agency to proceed); *Rep. of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 412 (E.D.N.Y. 2007) (holding Colombia's "choice of the instant forum is entitled to reasonable deference" and denying motion). OpenAI accuses the BCGEs of "strategic forum selection," but there is no basis for this. In *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689 (9th Cir. 2009), on which OpenAI relies, the French plaintiff had filed at least twenty related proceedings across Europe, added a U.S. affiliate as a plaintiff "in part to strengthen [Vivendi's] case," and chose a forum unrelated to the alleged fraud. *Id.* at 693, 695 & n.10. Foreign plaintiffs suing American defendants "typically bring such suits in the quintessentially convenient forum for the defendant." *Ravelo Monegro*, 211 F.3d at 513. Forum-shopping concerns are "muted" where the forum is "both the defendant's home jurisdiction, and a forum with a strong connection to the subject matter of the case." *Carijano*, 643 F.3d at 1229. Both are true here.

OpenAI and Altman, in contrast, have asserted legal positions in both the United States and Canada that selectively assert or waive contrary jurisdictional objections. OpenAI opposed a 2026 joint investigation by Canadian provincial and federal privacy commissioners by arguing that it had no establishment or employees in Canada before ChatGPT's November 2022 launch. OpenAI contested the commissioners' jurisdiction on several grounds, including a British Columbia-specific objection. OpenAI also refused the commissioners' request to examine its systems. PIPEDA Findings #2026-002, paras. 23, 34, 41, 43, 50 (May 6, 2026). In Florida lawsuits arising out of another ChatGPT-assisted mass shooting, Altman argued that the case should be dismissed because Florida does not have jurisdiction over Altman. Altman says this is because he "resides in California," and because "every alleged act attributed to him," including "setting corporate policy, approving product features, [and] directing model releases," "occurred

there." *Joshi*, ECF No. 52 at 45. Mr. Altman makes a similar objection in the Florida Attorney General's action. Def. Sam Altman's Mot. to Dismiss at 1–4, *Off. of the Att'y Gen. v. OpenAI Global, LLC*, No. 26-000295-GCAXMX (Fla. 10th Jud. Cir. Ct. Sept. 30, 2026). But here, OpenAI and Altman argue the case should be sent to British Columbia.

**1. The residence of the parties and witnesses**

Defendants reside in California, and OpenAI concedes the same for "many of their witnesses." ECF No. 18 at 19. In the Florida actions, Defendants represent that every act attributed to Mr. Altman, including "setting corporate policy, approving product features, [and] directing model releases," "occurred" in California. *Joshi*, ECF No. 52 at 45. OpenAI's own statement of facts locates nearly all of the witnesses to the June 2025 decision in California. Two members of OpenAI's Intelligence & Investigations team reviewed Van Rootselaar's flagged account; both are current employees, and one is based in California. Ex. 1, Defs.' Stmt. of Facts ¶ 3. The two individuals who decided whether to refer the account to law enforcement are current employees based in California. *Id.* ¶ 4. Between late June and August 2025, a working group conducted a case study of past cases, including Van Rootselaar's; eleven of its twelve members were based in California at the time. *Id.* ¶ 5. Of the seventy-five current full-time employees on the Intelligence & Investigations team, sixty-six are based in the United States, twenty-nine are in California, and none are located in Canada. *Id.* ¶ 2. The Complaint also describes the as yet unnamed reviewers who flagged the shooter's account, the leadership that overruled the referral recommendation, the authors of the Model Spec and escalation guidelines, and Altman. Compl. ¶¶ 5–6, 15, 40–43; FAC ¶¶ 23, 33, 46, 153–54. Former OpenAI employees who reside in California are non-parties whom OpenAI cannot compel to participate in British Columbia.[7] For example, one member of the working group that

[7] OpenAI has experienced significant employee turnover in recent years, including among employees responsible for safety decisions. FAC ¶¶ 70, 80–87; *see also* Kyle Wiggers, *OpenAI's chief research officer has left following CTO Mira Murati's exit*, TECHCRUNCH (Sept. 25, 2024), https://techcrunch.com/2024/09/25/openais-chief-research-officer-has-left/; Rachel Metz & Shirin Ghaffary, *OpenAI Dissolves Key Safety Team After Chief Scientist's Exit*, BLOOMBERG NEWS (May 17, 2024), https://news.bloomberglaw.com/artificial-intelligence/openaidissolves-key-safety-team-after-chief-scientists-exit; Jan Leike (@janleike), X (May 17, 2024), https://x.com/janleike/status/1791498174659715494 (thread); *see also* Jason Nelson, *OpenAI Exec Who Quit Says Safety 'Took a Backseat to Shiny Products'*, DECRYPT (May 17, 2024), https://decrypt.co/231294/openai-exec-quit-safety-took-backseat-shinyproducts; Dev Kundaliya, *OpenAI prioritising 'shiny products' over safety, says*

(continued...)

analyzed Van Rootselaar's case, and that member's chief of staff, no longer work at OpenAI. Ex. 1, Defs.' Stmt. of Facts ¶ 5. The damages witnesses are Plaintiffs' own officers and employees and will appear in

---

*departing researcher*, COMPUTING (May 20, 2024), https://www.computing.co.uk/news/4209644/openai-prioritising-shinyproducts-safety-departing-researcher; Daniel Kokotajlo, LessWrong (user profile), https://www.lesswrong.com/users/daniel-kokotajlo (last visited Oct. 8, 2026); *see* also Victor Tangermann, *OpenAI Safety Worker Quit Due to Losing Confidence Company "Would Behave Responsibly Around the Time of AGI"*, FUTURISM (May 13, 2024), https://au.news.yahoo.com/openai-safety-worker-quit-due-175257906.html; Gretchen Krueger (@GretchenMarina), X (May 22, 2024), https://x.com/GretchenMarina/status/1793403475260551517; *see also* Jyoti Mann, *Another OpenAI employee announced she quit over safety concerns hours before two exec resigned*, BUSINESS INSIDER (May 22, 2024), https://www.businessinsider.com/another-openai-employee-quits-over-safety-concerns-2024-5; Sharon Goldman, *Exodus at OpenAI: Nearly half of AGI safety staffers have left, says former researcher*, FORTUNE (Aug. 26, 2024), https://fortune.com/2024/08/26/openai-agi-safety-researchersexodus/; Hayden Field, *OpenAI reassigns top AI safety executive Aleksandr [sic] Madry to role focused on AI reasoning*, CNBC (July 23, 2024), https://www.nbcchicago.com/news/business/money-report/openairemoves-ai-safety-executive-aleksander-madry-from-role/3498693/; Maxwell Zeff, *OpenAI loses another lead safety researcher, Lilian Weng*, TECHCRUNCH (Nov. 8, 2024), https://techcrunch.com/2024/11/08/openai-loses-another-lead-safety-researcher-lilian-weng/; Garrison Lovely, *Breaking: Top OpenAI Catastrophic Risk Official Steps Down Abruptly*, OBSOLETE (Apr. 15, 2025), https://www.obsolete.pub/p/breaking-top-openai-catastrophic; Miles Brundage, *Why I'm Leaving OpenAI and What I'm Doing Next* (Oct. 23, 2024), https://milesbrundage.substack.com/p/why-im-leaving-openai-and-what-im; Steven Adler (@sjgadler), X (Jan. 27, 2025), https://x.com/sjgadler/status/1883928200029602236; Beatrice Nolan, *Another OpenAI researcher quits—claims AI labs are taking a 'very risky gamble' with humanity amid the race toward AGI*, FORTUNE (Jan. 28, 2025), https://fortune.com/2025/01/28/openai-researcher-steven-adler-quit-ai-labs-taking-risky-gamble-humanity-agi/; Maxwell Zeff, *A Research Leader Behind ChatGPT's Mental Health Work Is Leaving OpenAI*, WIRED (Nov. 24, 2025), https://www.wired.com/story/openai-research-lead-mental-health-quietly-departs/; Maximilian Schreiner, *OpenAI safety researcher joins Anthropic's alignment team*, THE DECODER (Jan. 16, 2026), https://the-decoder.com/openai-safety-researcher-joins-anthropics-alignment-team/; Lucas Ropek, *OpenAI policy exec who opposed chatbot's 'adult mode' reportedly fired on discrimination claim*, TECHCRUNCH (Feb. 10, 2026), https://techcrunch.com/2026/02/10/openai-policyexec-who-opposed-chatbots-adult-mode-reportedly-fired-on-discrimination-claim/; Rob Thubron, *OpenAI executive who opposed ChatGPT 'adult mode' fired over sex discrimination claim*, TECHSPOT (Feb. 11, 2026), https://www.techspot.com/news/111284-openai-executive-who-opposed-chatgpt-adult-modefired.html; Casey Newton, *Exclusive: OpenAI disbanded its mission alignment team*, PLATFORMER (Feb. 11, 2026), https://platformer.news/openai-mission-alignment-team-joshua-achiam/; Lucas Ropek, *OpenAI disbands mission alignment team*, TECHCRUNCH (Feb. 11, 2026), https://techcrunch.com/2026/02/11/openaidisbands-mission-alignment-team-which-focused-on-safe-and-trustworthy-ai-development/; Jackson Chen, *OpenAI's head of safety is reportedly leaving as part of company reorganization*, ENGADGET (July 11, 2026), https://www.engadget.com/2212941/openai-head-of-safety-leaving-companyreorganization/; Aditya Mehta, *OpenAI cuts ties with 3 safety researchers, WSJ reports*, TECHCRUNCH (Oct. 1, 2026), https://techcrunch.com/2026/10/01/openai-cuts-ties-with-three-safety-researchers-wsj-reports/; Anthony Ha, *OpenAI safety employee resigns, claiming the company's 'culture is broken'*, TECHCRUNCH (Oct. 3, 2026), https://techcrunch.com/2026/10/03/openai-safety-employee-resignsclaiming-the-companys-culture-is-broken/.

California. Parties control their own witnesses and documents. *See Lueck*, 236 F.3d at 1147 ("[T]he parties control, and therefore can bring, all the United States evidence to New Zealand.").

OpenAI does not adequately explain the materiality or importance of the "hundreds" of third-party witnesses it says it cannot reach from California. ECF No. 18 at 7, 18–21. In fact, many of the witnesses OpenAI loosely describes are likely subject to the control of the parties before this Court. The thirty-seven related actions include survivors, families of the victims, students, and educators, who all reside in British Columbia and submitted to this Court's jurisdiction by filing here. *See Adam v. Saenger*, 303 U.S. 59, 67–68 (1938). Because the Individual Plaintiffs, the Province, and SD59 are plaintiffs in these related actions, nearly all of the live witnesses are available for discovery. OpenAI may depose them and obtain their documents under Fed. R. Civ. P. 30 and 34 without letters rogatory. Others are subject to the control of the BCGEs. Lawless Decl. ¶¶ 5–13.

Furthermore, OpenAI's claim that there are "more than 50" police and "more than 100 Canadian first responders, educators, and witnesses to the horrific events" grossly overstates the facts. *See* ECF No. 18 at 7. There were only three RCMP officers in Tumbler Ridge present at the tragedy. Lawless Decl. ¶ 12. While other Emergency Response Teams from other jurisdictions appeared on the scene later, it is a fair inference that their testimony is of declining relevance. *Id.* In any event, RCMP records are not automatically producible in British Columbia. Phipps Decl. ¶ 42. OpenAI will need to comply with substantially the same standards whether this evidence is sought through letters rogatory or a third-party document request in British Columbia. Sobkin Decl. ¶¶ 12–28. OpenAI's emphasis on inflated numbers of potential sources of information ignores the Ninth Circuit's admonition against such crude measures of importance. *See Tuazon*, 433 F.3d at 1181.

OpenAI simply has not borne its "vexatious" burden. It claims without specificity that evidence in Canada bears on causation and damages, ECF No. 18 at 19–21, but it has not identified a single specific witness who is unavailable in the U.S., and has not established either the compelling relevance of such testimony or that such a witness is more available through Canadian processes than through U.S. processes. A defendant must explain "why various witnesses [are] material to [its] defense." *Bos. Telecomms.*, 588 F.3d at 1210; *see Cordova v. Huneault*, No. 25-cv-04685-VKD, 2026 WL 1076829, at *4, 7 (N.D. Cal.

Apr. 20, 2026) (denying forum non conveniens motion where the parties did not "explain why any of these witnesses' testimony is relevant to any party's claim or defense"). OpenAI asks the court to speculate about who might have further knowledge and how relevant it could be. Whether this case is in British Columbia or California, OpenAI will need to satisfy a court that its requests for third-party documents or testimony are appropriate. Those standards will be the same whether this action proceeds in British Columbia or here. Sobkin Decl. ¶¶ 12–28; Phipps Decl. ¶¶ 29–52.

**2. The forum's convenience to the litigants**

This factor favors Plaintiffs. OpenAI concedes that "litigation in British Columbia would be less convenient for Defendants." ECF No. 18 at 19. San Francisco and Vancouver lie roughly two and a half hours apart by nonstop flight. Witnesses from Tumbler Ridge would be required to travel regardless of whether trial took place in Vancouver or in San Francisco.[8] "[C]ourts often consider the burden of litigating in another forum 'significantly reduced' because of modern advances in transportation." *People Ctr., Inc. v. Deel, Inc.*, No. 25-cv-02576-CRB, 2026 WL 497491, at *17 (N.D. Cal. Feb. 23, 2026) (Breyer, J.).

This District is presumptively a convenient forum for OpenAI, because a "corporate defendant's state of incorporation and principal place of business is presumptively a convenient forum." *Morris v. AGFA Corp.*, 51 Cal. Rptr. 3d 301, 311 (Cal. Ct. App. 2006), *cited in Carijano*, 643 F.3d at 1233. OpenAI's own litigation record confirms the point. Twenty-five individual cases alleging that ChatGPT has caused people to harm themselves and/or others are currently pending in *In re ChatGPT Product Liability Cases*, JCCP No. 5431 (S.F. Super. Ct.) before Judge Schulman. In that JCCP, OpenAI and Altman ***supported*** coordination of these matters. That JCCP now includes an action by a Canadian plaintiff. *Carrier v. OpenAI Found., et al.*, No. CGC-26-637791 (S.F. Super. Ct.).

OpenAI has embraced this jurisdiction in other high-profile litigation. OpenAI asked the Judicial Panel on Multidistrict Litigation to centralize the copyright actions against it in this District. *See In re OpenAI Copyright Litig.*, 776 F. Supp. 3d at 1353; *see also Musk v. Altman*, No. 4:24-cv-04722-YGR (N.D. Cal.) (OpenAI and Altman litigating claims concerning OpenAI's governance in this District). In Ontario, OpenAI argued that the United States was "a more appropriate, suitable and convenient forum" for

[8] If this matter were transferred to Canada, it would likely be heard in Vancouver. Witnesses from Tumbler Ridge and elsewhere would therefore be required to come there.

Canadian publishers' claims because "[a]ll of the defendants and their witnesses are in the United States." *Toronto Star Newspapers*, 2025 ONSC 6217, para. 111. Notably, OpenAI does not cite any other instance where it has argued that California is not an appropriate forum and another jurisdiction is the appropriate forum to exercise control over it.

OpenAI cites two cases in which courts granted dismissal even though the defendants resided in California. ECF No. 18 at 19. But they do not persuade here. In *Doud v. Kochai*, plaintiffs alleged theft of property and conversion of land in Afghanistan. No. C 12-6061 MEJ, 2013 WL 5313701, at *2–4 (N.D. Cal. Sept. 23, 2013). In the scheme, a defendant bribed an Afghan judge to overlook a falsified description of the property submitted as part of the property transaction under Afghan law. *Id.* at *2. ***All*** of the alleged activities and events occurred outside of the United States. *Id.* at *4. No witnesses other than the named defendants were located in the United States. *Id.* Physical and testimonial evidence in Afghanistan presented language barriers. *Id.* Here, the BCGE Complaint alleges that the causal events occurred within the district and that non-party witnesses are present within the United States. Compl. ¶¶ 7, 22–24, 41, 44. It is true that the tragic assault occurred in Canada. But prior to that, [redacted] through a defective product designed in California, and then humans in the U.S. overrode a recommendation to notify the Province about the dangers. *Id.* ¶¶ 5–6, 8, 23, 41–43; OAI_TR_0000001; OAI_TR_0000002. The instant action presents a far less "localized" controversy than a dispute over a parcel of land in Afghanistan.

In *Nibirutech Ltd. v. Jang*, a Chinese company sued its former marketing director and a California company owned by an alleged co-conspirator over invoices diverted in China. No. C 14-3091 PJH, 2015 WL 831465, at *1, 4 (N.D. Cal. Feb. 23, 2015). The court raised concerns that many relevant documents were in Chinese and questioned the accuracy of Chinese translations. *Id.* at *4, 6. The court noted that the defendants had "identified ten current or former NibiruTech employees [in China] with knowledge of NibiruTech's operations, nine of whom speak no English or limited English." *Id.* at *6. And the specific identification of relevant non-English-speaking witnesses in China in *Nibirutech* was far more credible than OpenAI's dramatically vague invocation of "hundreds" of third-party witnesses. ECF No. 18 at 7. Here, Plaintiffs are not aware of a single party or witness who does not speak English, and OpenAI

generated the content at issue in English from California. But more compellingly, the number of witnesses that reside in California or the United States, especially now that the Individual Plaintiffs and BCGEs have submitted to jurisdiction here, far outweighs those in Canada. While both *Nibirutech* and *Doud* involved alternative forums thousands of miles from California, a witness in British Columbia can reach this Court by a nonstop flight of two and a half hours from Vancouver. Witnesses from Tumbler Ridge or other areas in the north of the province will not be significantly more inconvenienced traveling to San Francisco than they will be traveling to Vancouver.

**3. Access to physical evidence and other sources of proof**

This factor favors Plaintiffs. The "crucial focus" of this factor "is not on the number of witnesses or quantity of evidence in each locale, but rather the materiality and importance of the anticipated evidence and witnesses' testimony," after which the court should "then determine their accessibility and convenience to the forum." *Tuazon*, 433 F.3d at 1181 (quoting *Lueck*, 236 F.3d at 1146) (cleaned up).

The most material and important anticipated evidence in this action is in OpenAI's possession in California.[9] Specifically, the shooter's chat logs and account records, review records, Model Spec drafts, safety-testing records, and internal communications concerning the June 2025 decision are critical evidence, and all of them are in California. Compl. ¶¶ 5–6, 23, 40–43, 48, 111; *see also* Ex. 1, Defs.' Stmt. of Facts, ¶¶ 1–4. Other critical evidence and important witnesses are in California. OpenAI's Research team primarily develops its large language models, and its Applied team primarily develops ChatGPT. Of the 2,489 full-time employees on those teams, at least 1,880 (75.5%) are based in California and 2,342 (94.1%) in the United States; eleven (0.4%) are based in Canada. Ex. 1, Defs.' Stmt. of Facts ¶ 1. OpenAI's Model Policy team, which translates "risk and harm models into clear behavioral specifications," works within Safety Systems in San Francisco. OpenAI, Model Policy (job posting), https://openai.com/careers/model-policy-san-francisco/. OpenAI's Intelligence and Investigations team posts its roles in San Francisco and other U.S. locations, and no safety or investigations posting identifies a Canadian location. *See, e.g.*, OpenAI, Abuse Investigator (job posting), https://openai.com/careers/abuse-

[9] Not only does OpenAI control the relevant records and systems, but it recently declined the Canadian privacy commissioners' request to examine those systems. PIPEDA Findings #2026-002, para. 50 (May 6, 2026).

investigator-san-francisco/; Analyst, Intelligence & Investigations (job posting), https://openai.com/careers/analyst-intelligence-investigations ("This role is based in San Francisco, CA"). OpenAI's employees and executives, including Altman, reside and work in California. Compl. ¶ 15; Ex. 1, Defs.' Stmt. of Facts ¶¶ 1, 4. And key evidence that OpenAI describes as "third-party evidence" is actually within the possession of the BCGEs, including "local mental health care providers" and evidence about "$200 million of construction funding to build a new school and community health center." *See* ECF No. 18 at 7, 18–19; Lawless Decl. ¶¶ 7–9.

The authorities OpenAI cite concerned accidents whose physical evidence and official investigations were abroad. *Lueck*, 236 F.3d at 1146–47 (New Zealand air crash; all U.S. evidence was "under the control of" the parties); *Umeda v. Tesla Inc.*, No. 20-cv-02926-SVK, 2020 WL 5653496 (N.D. Cal. Sept. 23, 2020) (Tokyo collision; plaintiffs conceded adequacy; dismissal on extensive conditions); *In re Air Crash Over the Mid-Atlantic on June 1, 2009*, 760 F. Supp. 2d 832, 843 & n.7, 844 & n.9 (N.D. Cal. 2010) (French investigation, design, and certification evidence; the only U.S. evidence not controlled by Defendants was of disputed value, already partly public, and likely possessed by a Swiss company in addition to a U.S. company). Here, the injury-causing conduct is OpenAI's June 2025 review and decision not to alert law enforcement, and the evidence of that decision is in OpenAI's possession in California.

Furthermore, the barriers OpenAI attributes to obtaining discovery in this forum exist in British Columbia as well. OpenAI's declarant states that in British Columbia litigation, RCMP witnesses or records require "a third-party records application . . . on notice to the RCMP," Lockhart Decl. ¶ 7; that production of law-enforcement materials during an investigation "is not automatic," *id.* ¶ 17; and that "a coroner cannot be compelled to produce or permit inspection of a record for purposes of a legal proceeding in which the coroner is not a party," *id.* ¶ 18 (citing Coroners Act, S.B.C. 2007, c. 15, s. 65(3)). But this does not make British Columbia a more convenient forum because those exact same barriers would limit discovery if this action were transferred to British Columbia. Lawless Decl. ¶ 16; Phipps Decl. ¶¶ 29–52; Sobkin Decl. ¶¶ 12–28.

OpenAI also overstates the burden of letters rogatory. Expert Michael Sobkin squarely address this issue, concluding that "a British Columbia court will employ substantially similar standards to evaluate

whether discovery is appropriate, whether the request is made either through letters rogatory issued by a court in a United States proceeding, or via an application for third party documents in a Canadian court proceeding." Sobkin Decl. ¶ 12. British Columbia courts enforce letters of request under the Evidence Act, R.S.B.C. 1996, c. 124, s. 53, and the Canada Evidence Act, R.S.C. 1985, c. C-5, s. 46. Even OpenAI's declarant acknowledges that "the presumption is to enforce letters rogatory." Lockhart Decl. ¶ 12; *see also* Phipps Decl. ¶¶ 34–36; Sobkin Decl. ¶¶ 12–28. In May 2026, a court in this District issued letters rogatory "forthwith" to depose two witnesses residing in Canada. *Andersen v. Stability AI Ltd.*, No. 23-cv-00201-WHO (LJC), 2026 WL 1244041, at *4 (N.D. Cal. May 6, 2026) . OpenAI cites that decision. ECF No. 18 at 21. Litigation in British Columbia would impose a parallel burden: a British Columbia litigant would need an order under 28 U.S.C. § 1782 to obtain evidence from non-party witnesses in the United States, including OpenAI's former employees, and relief under Section 1782 rests in the district court's discretion. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). At trial, a party may use the deposition of a witness more than 100 miles away, Fed. R. Civ. P. 32(a)(4)(B), and the Court may permit remote testimony "[f]or good cause in compelling circumstances and with appropriate safeguards," Fed. R. Civ. P. 43(a).

Finally, the criminal charge against Bryant, a U.S. person, for conspiring with Van Rootselaar also lies in the United States. Kristovich Decl. Ex. 2 at 5:4–25, 8:1–6. OpenAI argues that this evidence is in the RCMP's possession, but acknowledges that Washington authorities have it too. ECF No. 18 at 9; Kristovich Decl. Exs. 1–2. The point undermines OpenAI's argument, because it shows that RCMP evidence is available in the U.S. OpenAI's conversations with Van Rootselaar, authored in the U.S., [redacted].[10]

[10] [redacted]

(continued...)

FAC ¶ 168. OpenAI clearly wishes to foist blame on Bryant for the mass assault, and it asserts that neither forum could compel Bryant's trial testimony, ECF No. 18 at 22 n.2. But here, Bryant is subject to a deposition subpoena under Fed. R. Civ. P. 45, and as noted above, Fed. R. Civ. P. 32(a)(4)(B) permits use of Bryant's deposition at trial in this Court because Bryant resides more than 100 miles away; a British Columbia litigant would need Section 1782 assistance to obtain the same testimony.

There will be cross-border discovery in this case regardless of the forum. The most relevant evidence and sources of proof in this case are in California. Therefore, this factor weighs in Plaintiffs' favor.

**4. Whether unwilling witnesses can be compelled to testify**

"While Defendants need not provide a comprehensive list of potential unwilling witnesses, their general assertion of non-party witness unavailability, without identification of even a single unavailable witness, is entitled to little weight." *In re Volkswagen*, 2017 WL 66281, at *9 (citing *Carijano*, 643 F.3d at 1231). OpenAI's argument on this factor deserves little weight. *See Pepper, N.A. v. Expandi Inc.*, No. 15-CV-04066 NC, 2015 WL 7720922, at *5 (N.D. Cal. Nov. 30, 2015) (denying forum non conveniens motion because "Defendants have not stated with specificity who they would seek to depose, the relevance of those witnesses to the litigation, the inefficiency of litigating the case in the United States, or the actual cost to the defendants," and declining to "dismiss the case based on speculation that the litigation could be burdensome, or because defendants prefer to litigate the case in [another forum]").

Though it is not ideal for litigants to have to try their cases partly on deposition, ECF No. 18 at 21–22; *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947), this factor is at most neutral. In either jurisdiction, some witnesses will be unreachable, and both parties may be forced to rely on deposition testimony to some extent. *See In re Air Crash at Madrid, Spain, on August 20, 2008*, 893 F. Supp. 2d 1020, 1033 (C.D. Cal. 2011) (concluding availability of witnesses was in equipoise because, "no matter where these suits are tried, one side will face difficulty in gathering evidence and presenting witnesses for its case"; noting cost of transporting witnesses concerning 100 victims and 200 plaintiffs to the U.S. would be

[redacted]

much higher than the cost of transporting a few U.S. witnesses to Spain; and ultimately finding witness-related factors to only "slightly favor dismissal").

**5. The cost of bringing witnesses to trial**

This factor favors Plaintiffs. OpenAI concedes that "[i]t would be less expensive for Defendants' own witnesses to appear in California." ECF No. 18 at 22. OpenAI asserts that compelling "the numerous third-party British Columbian witnesses that they likely will call" would cost more, *id.*, but it identifies none of those witnesses. In fact, witnesses in remote Tumbler Ridge would likely also have to travel for any Canadian proceeding, either to Vancouver or to Dawson Creek. Remote testimony would further reduce the cost of any witness travel from British Columbia. Fed. R. Civ. P. 43(a); *see VoyagerOne Pte. Ltd. v. Starfortune Interactive Ent. Tech. Co, Ltd.*, No. 2:25-CV-04730-SVW-AGR, 2025 WL 4065359, at *5 (C.D. Cal. Dec. 15, 2025) (noting remote testimony as a means of reducing overseas travel costs).

**6. The enforceability of the judgment**

This factor weighs heavily in favor of retention. Defendants reside and hold their assets in California, and this Court can enforce an injunction governing OpenAI's California conduct through its contempt power. OpenAI calls this factor neutral because a British Columbia judgment "would be enforceable in British Columbia." ECF No. 18 at 22–23 (citing Lockhart Decl. ¶ 24). OpenAI offers no evidence that Defendants hold assets in British Columbia, does not offer to satisfy a British Columbia judgment, and does not address injunctive relief.

**7. Any practical problems or other factors that contribute to an efficient resolution**

The critical witnesses either reside in California or are under Plaintiffs' control and will appear in California. OpenAI states that it will produce its records electronically, ECF No. 18 at 7, 22, and Plaintiffs will produce most of their records electronically as well. No related civil litigation is pending in Canada, so retention creates no risk of duplicative costs or inconsistent rulings. The privacy commissioners' investigations of OpenAI are regulatory proceedings that do not adjudicate tort claims or award damages. Phipps Decl. ¶¶ 28, 69. The RCMP investigation and the coroner's inquest do not overlap with this action, because neither adjudicates civil liability. The Coroners Act provides that "[t]he jury must not make, and the coroner must not accept, any finding of legal responsibility or express any conclusion of law."

Coroners Act, S.B.C. 2007, c. 15, s. 38(3). *Juniper Networks, Inc. v. Andrade*, No. 20-CV-02360-BLF, 2021 WL 3514103, at *6, *13 (N.D. Cal. Aug. 10, 2021), on which OpenAI relies, ECF No. 18 at 23, is factually dissimilar: *Juniper* involved a parallel Ontario civil action between the same parties over an agreement that the parties agreed "shall be treated, in all respects, as an Ontario contract," and the court held that California's local interest weighed against dismissal.

Retention also promotes efficiency because related proceedings are pending in San Francisco. *In re ChatGPT Product Liability Cases*, JCCP No. 5431, coordinates product-liability claims that challenge the same GPT-4o design choices, including sycophantic design and safety testing. Judge Stephen M. Murphy granted coordination on February 3, 2026, after OpenAI and Altman filed a brief supporting coordination, and the coordination trial judge, Judge Ethan P. Schulman, entered Case Management Order No. 1 on August 4, 2026. Discovery of OpenAI's design and safety witnesses and records will proceed in San Francisco, and coordination with that proceeding and with the thirty-seven related actions in this District favors retention here.

**B. The public interest factors weigh in favor of litigating in California.**

**1. The local interest of this lawsuit**

California has an identifiable and significant interest in this controversy. "[W]ith this interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tuazon*, 433 F.3d at 1182; *see City of Almaty v. Khrapunov*, 685 F. App'x 634, 636 (9th Cir. 2017) (rejecting district court's expectation that factor only weighs against dismissal if California has "a stronger local interest" than the other forum). "California courts have repeatedly recognized the state's 'interest in deciding actions against resident corporations whose conduct in this state causes injury to persons in other jurisdictions.'" *Carijano*, 643 F.3d at 1232–33 (quoting *Stangvik v. Shiley Inc.*, 819 P.2d 14, 21 n.10 (Cal. 1991)). In *Carijano*, the Ninth Circuit held that "the district court undervalued California's significant interest in providing a forum for those harmed by the actions of its corporate citizens." *Id.* at 1232.

OpenAI concedes that "California has an interest in the conduct of companies that, like OpenAI, are headquartered in the state." ECF No. 18 at 26. California has a strong interest in developing tort law

governing AI products developed in California. The California Attorney General entered into a memorandum of understanding with OpenAI that includes commitments addressing the safety concerns at issue here. *See* October 2025 Memorandum of Understanding with the California Attorney General. OpenAI agreed that it "will continue to undertake measures to mitigate risks to teens and others in connection with the development and deployment of AI and of AGI," and that its Safety and Security Committee "has and will continue to have the authority to require mitigation measures . . . including halting the release of models or AI systems." Memorandum of Understanding ¶¶ 11–12; Compl. ¶ 52. The Complaint alleges that OpenAI's policies created risks in the United States, including ChatGPT's role in the April 2025 Florida State University shooting and the January 2025 Las Vegas explosion, Compl. ¶¶ 42, 56–59, and seeks injunctive relief governing OpenAI's conduct in California, Prayer ¶ f.

OpenAI then speaks for the BCGEs, asserting on their behalf that British Columbia has a stronger interest, despite the fact that the BCGEs have filed their complaint here. Setting aside the statement the BCGEs made by filing here, OpenAI's analysis fails for additional reasons. First, OpenAI claims that through this litigation, "Canada" wants to litigate Canadian gun control, school truancy, and the effectiveness of the Canadian public health system. ECF No. 18 at 7–8, 24–25. This is an obvious attempt to shift the focus of the litigation from OpenAI's conduct related to Van Rootselaar to political questions that are not justiciable in a Canadian court. Sobkin Decl. ¶¶ 3–11. And the authorities OpenAI cites in support of its argument that this case is about a purely British Columbian problem both concern aircraft that crashed abroad, which are not helpful comparators for the reasons discussed above. *Piper*, 454 U.S. at 260–61 (Scotland); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986) (Spain); *see* ECF No. 18 at 26.

OpenAI also points to Canadian legislation under consideration that would address online platforms and AI chatbots. ECF No. 18 at 23–24. Again, the enactment of legislation is an act of Parliament and under the separation of powers doctrine, the courts cannot second-guess it. Sobkin Decl. ¶¶ 3–6. Additionally, prospective legislation does not diminish California's interest in the conduct of its resident corporations, and in any event, the "possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper*, 454 U.S. at 247;

*supra* Section IV.A.7. And by filing here, British Columbia "has demonstrated its belief that [its] interest can be vindicated in the courts of the United States." *Dep't of Econ. Dev. v. Arthur Andersen*, 683 F. Supp. at 1484.[11] OpenAI also points to matters pending in Canada against OpenAI that involve claims by Canadian privacy commissioners that OpenAI has violated certain Canadian privacy statutes. But as the BCGEs' expert explains, those matters have nothing to do with a civil claim for damages. Phipps Decl. ¶¶ 31, 74. A forum non conveniens adjudication does not turn on whether a party is facing administrative proceedings in other jurisdictions.

OpenAI's act of state argument also fails. ECF No. 18 at 24. The doctrine applies only when "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co., Inc. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990). This type of question simply does not arise here. *See Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 351–57 (C.D. Cal. 1997) (determining applicability of doctrine to claims foreign government violated international law); *West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 828–29 (9th Cir. 1987) (doctrine bars claim addressing whether Mexican officials complied with Mexican law). Deciding OpenAI's liability requires no ruling on the validity of any Canadian law or official act, and the sovereign whose conduct OpenAI invokes is the Plaintiff.[12]

OpenAI also argues that the jury would need to assess the "conduct, standards, and regulations of the Canadian and British Columbian governments." ECF No. 18 at 24–25. However, OpenAI relies on two cases that involved foreign plaintiffs and foreign evidence of foreign injuries caused by foreign challenged conduct. *See Union Carbide*, 634 F. Supp. at 844, 866–67; *Seguros Universales, S.A. v. Microsoft Corp.*, 32 F. Supp. 3d 1242, 1250–52 (S.D. Fla. 2014). The third, *In re Vioxx Products Liability Litigation*, was

[11] The Province's choice of forum may not be dispositive on its own, ECF No. 18 at 25 n.4, but *Union Carbide* presented a very different balance of interests. *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December 1984*, 634 F. Supp. 842, 866–67 (S.D.N.Y. 1986), *aff'd as modified*, 809 F.2d 195 (2d Cir. 1987). And *RJR Nabisco, Inc. v. Eur. Cmty.* addressed the extraterritorial reach of RICO and has no application to forum non conveniens. 579 U.S. 325, 346–49 (2016).

[12] In fact, OpenAI argues that the case calls into question why school authorities did not address Van Rootselaar's failure to attend school. But students are only required to attend school through age 16 in British Columbia. Sobkin Decl. ¶ 10 & n.23. Van Rootselaar was 18 at the time of the tragedy.

more concerned with the risk of "disrupting the judgments of Italian and French regulatory bodies" about "standards of safety and labeling on companies marketing and selling drugs in Italy and France," so the decisions of a foreign government were directly at issue in a way that is more akin to the Act of State doctrine. 448 F. Supp. 2d 741, 745, 747–49 (E.D. La. 2006). Here, the BCGEs invoke principles of California tort law, seeking economic damages for the cost of responding to a tragedy that OpenAI caused from California and that OpenAI could have prevented by acting in California. OpenAI is operating under California law and has made binding commitments to the California Attorney General, including on safety. Memorandum of Understanding ¶¶ 9–12, 18.[13]

**2. The court's familiarity with governing law**

Under California's governmental-interest test, California has a strong interest in applying its liability rules to the conduct of California corporations within California. District courts are not required to determine what law will govern before deciding a forum non conveniens motion. *Carijano*, 643 F.3d at 1234. Despite OpenAI's claims that British Columbia law is likely to apply, California law may well apply. In *Estados Unidos Mexicanos v. Diamondback Shooting Sports Inc.*, a court in this Circuit applied Arizona law to a foreign sovereign's tort claims against Arizona firearms dealers, finding that "Arizona overall has the most significant relationship to the occurrence and the parties," and giving diminished weight to the place of injury because the injuries resulted from intervening acts of third parties. No. 4:22-CV-00472-TUC-RM, 2024 WL 1256038, at *13 (D. Ariz. Mar. 25, 2024). The shooter's conduct presents the same posture, and Defendants reside and acted in California. OpenAI argues that the "mere possibility" of foreign law favors dismissal, ECF No. 18 at 26–27, but in each case it cites, the injury-causing conduct or the parties' relationship was centered abroad. *See Air Crash Over the Mid-Atlantic*, 760 F. Supp. 2d at 845–847 (crash of Air France flight from Brazil to France, with only two U.S. decedents, and with analysis affected by Montreal Convention); *Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1240 (S.D. Fla. 2006), *aff'd*, 240 F. App'x 822 (11th Cir. 2007) (injury-causing conduct, center of parties' relationship, and most parties located in Guatemala). And in *Etaliq, Inc. v. Cisco Sys., Inc.*, the Central District of California court was unable to "discern[] any connection this case has to this particular forum" because the

[13] Memorandum of Understanding, *supra* n.3.

case's California connections were all in northern California. No. CV 11-3672 GAF (FFMx), 2011 WL 13220445, at *3–4, 6 (C.D. Cal. July 20, 2011) (emphasis in original).

If foreign law applies to any issue, this Court is quite capable of applying it under Fed. R. Civ. P. 44.1. *See Silverlake Park LLC v. Stewart Title Guar. Co.*, No. 2:17-CV-03291-CAS-AGRx, 2025 WL 241118, at *3 (C.D. Cal. Jan. 10, 2025) (denying motion in limine to exclude evidence of Texas standard of care, and expressing no concern that jury will have any difficulty understanding or applying it). The need to apply foreign law "alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate." *Piper*, 454 U.S. at 260 n.29; *see Tuazon*, 433 F.3d at 1182. This includes consideration of law that OpenAI may claim limits economic damages or immunities available to the BCGEs under Canadian law.

**3. The burden on local courts and juries**

This factor favors Plaintiffs. First, this case concerns the conduct and duties of an AI company headquartered in San Francisco and the corporate policies it adopted there. These are familiar subjects to a California jury. Even if a California jury had to consider an unfamiliar subject, "[j]uries routinely address subjects that are totally foreign to them, ranging from the foreign language of patent disputes to cases involving foreign companies, foreign cultures and foreign languages." *Tuazon*, 433 F.3d at 1181–82. A California jury can evaluate the issues OpenAI identifies under proper instructions and to the extent they are relevant and justiciable. *See* Sobkin Decl. ¶¶ 10–11.

Second, *Ministry of Health* also does not support dismissal. OpenAI quotes *Ministry of Health, Province of Ontario v. Shiley Inc.*, for the proposition that "it is reasonable for Canada to incur the expense of a trial involving its own citizens." 858 F. Supp. 1426, 1442 (C.D. Cal. 1994); ECF No. 18 at 28. But that case sought reimbursement for harm caused to certain patients by the failure of an implanted heart valve and set a precedent for handling future cases involving the same medical device. 858 F. Supp. at 1429. Here, it is similarly reasonable for California to bear the cost of a trial to hold one of its most valuable corporations accountable for its harmful actions, prior to its public offering.[14] And *Ministry of Health* stayed the province's action on conditions the defendant accepted, and the court retained jurisdiction;

[14] The current valuation of OpenAI is more than $1.1 trillion. *See* https://finance.yahoo.com/markets/private-companies/highest-valuation/.

OpenAI elsewhere describes the decision as a dismissal. 858 F. Supp. at 1442; ECF No. 18 at 18. OpenAI does not carry its burden on this factor.

#### 4. The congestion in the court factor is neutral at most, and the costs of this dispute relate to the California forum

Court congestion is at most a neutral factor. OpenAI relies on statistics for this District, ECF No. 18 at 28–29 & n.7, and offers no data on the Supreme Court of British Columbia, which reported that "[t]hrough most of 2024, the Court continued to struggle with having too few judges to meet the high demand for trials" and that it "bumped another 116 trials." Supreme Court of British Columbia, 2024 Annual Report 5–6. The related suits in this District and in San Francisco Superior Court promote efficient resolution. This dispute arises from decisions OpenAI made in this District, so its resolution here imposes no costs unrelated to the forum. Cross-border discovery will occur in either forum, and a British Columbia action would require proceedings under 28 U.S.C. § 1782 in this District to reach non-party witnesses here. This factor does not support dismissal.

### C. Defendants Have Not Disclosed to the Court Their Intent to Seek Additional Discovery Relating to U.S.-based Third Parties

For the reasons stated above, Plaintiffs believe that the Court has enough information to deny Defendants' Motion. However, this Motion was filed before Defendants filed an Answer or any Affirmative Defenses, and Defendants have omitted relevant information about their anticipated defenses and third-party sources of discovery to tilt the forum non conveniens analysis in their favor.

Defendants' motion states that the Complaint does not "mention Van Rootselaar's . . . alleged use of other online platforms in planning the shooting." ECF No. 18 at 16. Defendants suggest to the court that relevant evidence from these platforms would be unavailable to the Court:

> The RCMP also possesses physical and digital evidence of Van Rootselaar's activities on other online platforms, including the Discord communications with Bryant which triggered the U.S.-Canadian law enforcement investigation into Bryant—all of which is beyond the Court's subpoena power.

ECF No. 18 at 20. What makes this argument unpersuasive is Defendants' failure to identify any of these other platforms. As it happens, the one alternative platform mentioned by name (Discord) is headquartered

in San Francisco.[15] It is incorrect to pretend that evidence from Discord is “beyond the Court’s subpoena power” when the relevant corporation is headquartered within the district. In contrast, in British Columbia, Discord and the other U.S. platforms are beyond a British Columbia court’s subpoena power. A British Columbia litigant would need Section 1782 relief to obtain their records. And it is unlikely the scope of discovery granted under Section 1782 would be as broad as that provided if they are subpoenaed as third parties here.

While not stated in their motion, the Defendants [redacted]. Back in July, Defendants [redacted]. *See* Ex. 2 to the Weaver Decl., [redacted]

[15] Discord, Terms of Service (eff. Sept. 29, 2025), https://discord.com/terms (“Discord Inc. is located at 444 De Haro Street #200, San Francisco, CA 94107, USA.”).

[redacted]

[redacted]

[redacted].[16]

While the BCGEs do not agree with the relevance of [redacted] should thus be considered by this Court as part of the forum non conveniens analysis and weighed against Defendants' generalized references to Canadian witnesses.

---

[16] [redacted].

It is possible that Defendants have already identified additional undisclosed third-party sources of evidence within the United States. Plaintiffs are concerned that if the Court grants the forum non conveniens motion at this early stage, Defendants will subsequently reveal that there are in fact more sources of evidence and relevant witnesses in California than what was previously represented to this Court in order to obtain dismissal. That is prejudicial to Plaintiffs and warrants against dismissal.

## V. CONCLUSION

For the reasons set forth above, the Court should deny OpenAI's motion to dismiss for forum non conveniens.

Dated: November 5, 2026

Respectfully submitted,

By: /s/ Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
Stranch, Jennings & Garvey, PLLC
1111 Broadway, Suite 300
Oakland, California 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

*Attorneys for Plaintiffs His Majesty the King in Right of the Province of British Columbia and Board of Education of School District No. 59 (Peace River South)*

Reidar Mogerman, K.C.
rmogerman@cfmlawyers.ca
Rebecca Coad
RCoad@cfmlawyers.ca
**CFM LAWYERS LLP**
856 Homer Street, #400
Vancouver, British Columbia V6B 2W5
Canada

*Canadian Counsel for Plaintiffs His Majesty the King in Right of the Province of British Columbia and Board of Education of School District No. 59 (Peace River South)*